Ethan Preston (263295)
ep@eplaw.us
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197

*Attorneys for Plaintiff Arlene Chen, individually, and on behalf of all others similarly situated*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ARLEEN CHEN, *individually and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>NYS CORPORATION, a Delaware corporation, MICHAEL PALANCE, an individual, and WARNER BROS. ENTERTAINMENT, INC., a Delaware corporation, and DOES 1-10, inclusive,<br><br>Defendants. | No. 2:24-cv-1172<br><br>**COMPLAINT FOR BREACH OF CONTRACT AND CLASS ACTION COMPLAINT FOR**<br>**(1) VIOLATIONS OF THE KREKORIAN ACT, CAL. LAB. CODE § 1702; AND**<br><br>**(2) VIOLATIONS OF THE UNLAWFUL COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200.**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff Arleen Chen ("Chen" or "Plaintiff") on her own behalf, and on behalf of the other members of the class, brings this class action complaint against Defendants NYS Corporation ("NYS"), Michael Palance ("Palance"), and Warner Bros. Entertainment Inc. ("WBEI") and Does 1 to 10 (hereinafter collectively referred to as "Defendants"). In support thereof, Plaintiff states as follows:

**Nature of the Case**

1. Plaintiff signed a contract with NYS under which she paid $9,000 in exchange for her child to have an opportunity to participate in a NYS production, namely the Go Iguanas Metaverse movie, filmed on WBEI's studio lot in Burbank, California in July 2023.

2. NYS breached this contract by moving the date of this production to a

time when it knew Chen's child could not attend. Further, NYS's contract violates California Labor Code § 1702 of the Krekorian Act. NYS's contract further violates the "unlawful" and "unfair" prongs of the unlawful competition law, California Business and Professions Code § 17200 ("UCL").

3. Plaintiff seeks damages for breach of contract for herself. Plaintiff seeks damages ("not less than three times the amount paid by the artist, or on behalf of the artist"), attorney's fees, and injunctive relief under the Krekorian Act on her own behalf and behalf of other class members. Cal. Lab. Code § 1704.2. Finally, Plaintiff seeks restitution and injunctive relief under the UCL, and an award of attorneys' fees under California Code of Civil Procedure § 1021.5, on her own behalf and behalf of other class members.

**Parties**

4. Plaintiff Arleen Chen is a resident of Georgia. She has a child.

5. Filings with the California Secretary of State indicate NYS Corporation is a Delaware corporation and is headquartered at 7600 North 16th Street, Suite 201, Phoenix, Arizona 85020. NYS produces and distributes direct-to-video programming like TV shows and movies.

6. Filings with the California Secretary of State indicate Michael David Palance is the Chief Executive Officer, Secretary, and Chief Financial Officer of NYS. On information and belief, Palance also owns NYS.

7. Warner Bros Entertainment Inc. is a publicly-traded Delaware corporation headquartered at 3400 West Riverside Drive, Burbank, California 91505. WBEI is one of the world's largest entertainment conglomerates, and has many different operates. In particular, it operates a studio lot and film production facilities at its offices on 3400 West Riverside Drive.

8. Plaintiffs are currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants sued herein under the fictitious names Does 1 through 10, inclusive, and therefore, sues

such Defendants by such fictitious names. Plaintiffs will seek leave to amend this complaint to allege the true names and capacities of said fictitiously named Defendants when their true names and capacities have been ascertained. Plaintiffs are informed and believe, and based thereon allege, that each of the fictitiously named Doe Defendants is legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by Plaintiffs.

9. Plaintiffs are informed and believe, and based thereon allege, that all defendants, including the fictitious Doe Defendants, were at all relevant times acting as actual agents, ostensible agents, conspirators, partners, alter egos, and/or joint venturers and employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of their co-Defendants; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contraction with the other allegations.

10. All Defendants, including NYS, Palance, and WBEI and Does 1 through 100, are collectively referred to as "Defendants." Whenever this complaint refers to any act of Defendants or acts of Bolt, the allegations shall be deemed to mean the act of those defendants named in the particular cause of action, and each of them, acting individually, jointly and severally, unless otherwise alleged.

**Jurisdiction and Venue**

11. Plaintiff makes no allegation as to the citizenship of NYS and Palance beyond the assertion that they are not citizens of Georgia. WBEI is a Delaware corporation with its principal place of business in California. This Complaint alleges claims on behalf of a proposed class whose members reside in California and throughout the rest of the world. The members of the proposed class are minimally diverse from the Defendants. On information and belief, the aggregate of the amount in controversy in these class claims exceed the sum or value of $5

million and the total number of class members exceeds 100. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(d)(2).

12. This Court has personal jurisdiction over the Defendants under California Code of Civil Procedure section 410.10 because many of the acts alleged herein were committed and injury was incurred in California, because they conduct operations and/or sales in California, are registered to do business in California, and the acts alleged herein originated in or were directed to this District.

13. Moreover, California is the place of performance for NYS's contract with Chen. *Cf. Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 838-41 (9th Cir. 1986)

14. Venue is proper in this District under 28 U.S.C. § 1391(b) because one Defendant resides in this District and because a substantial part of the events giving rise to the claim occurred in this District.

## Common Allegations

### The Krekorian Act

15. The California Legislature passed the Krekorian Act in 2009. See Assembly Bill No. 1319 (2009-2010 Reg. Sess.); codified at Cal. Labor Code section 1701 et seq. *See also* 2009 Cal. Stat. ch. 286 at § 1 (stated legislative purpose of Act was to "prohibit[]. . . unfair, . . . destructive, [and] unscrupulous . . . business practices by which the public has been injured in connection with talent services.")

16. **AFTRSs:** The Krekorian Act bans so-called "advance-fee talent representation services" (AFTRSs) which sell opportunities to receive even unpaid employment experience in the Hollywood entertainment industry in exchange for an upfront fee: it is illegal to "own, operate, or act in the capacity of an [AFTRS] or advertise, solicit for, or knowingly refer a person to, an [AFTRS]." Cal. Lab. Code § 1702. The Krekorian Act defines a AFTRS as:

> a person who provides or offers to provide, or advertises or represents itself as providing, an artist [] with one or more of the following services described below, provided that the person charges or receives a fee from or on behalf of an artist []
>   (1) Procuring or attempting to procure an employment opportunity or an engagement as an artist.

Cal. Lab. Code § 1702.1(a). Under the Krekorian Act, an "'[e]mployment opportunity' means the opportunity to obtain work as an artist, *whether compensated or not*." Cal. Lab. Code § 1701(c) (emphasis added). AFTRSs also include "a person who charges or receives a fee from, or on behalf of, an artist for any product or service" such as the pre-production meetings "required for the artist to obtain, from or through the person, [] services" which include procuring an employment opportunity as an artist. Cal. Lab. Code § 1702.1(b).

17. NYS's business qualifies an AFTRS. NYS's contract with Chen provided, in exchange for $9,000, an opportunity for Chen's child "to participate in a Premiere+ production under the terms and conditions of this contract," provided that Chen's child completed weekly "pre-production meetings" with NYS's writers via Zoom.

18. NYS's contract described the NYS July 2023 production which Chen's child sought to participate in:

> The next Go Iguanas! Movie will be shot on location at Universal Studios in Hollywood. [] Since 2018, Go Iguanas! Has been beloved by children in over 100 countries around the world and the Premiere platform has become a safe place for family friendly programming.

(In fact, NYS's July 2023 production was actually filmed on WBEI's Burbank studio lot.)

19. NYS's contract stated "actors in our production launch their debut appearance with quite a fan base."

20. NYS's contract indicated that NYS's fees varied according to the number of lines in NYS's production.

21. NYS's contract stated:

> All performances, Participation or other materials created or

> developed by Participant [] in connection with a Premiere production [] shall be work [] in the form of a TV show produced by Premiere [] shall be wholly owned by Premiere [] and therefore Premiere shall be the author and copyright owner of the work pursuant to the United States Copyright Act.

The opportunity to participate in NYS's July 2023 production offered under its contract constituted an "employment opportunity" under Labor Code § 1701(c).

22. **Artists:** The beneficiaries of NYS's contracts constituted "artists" under Labor Code section 1701. Labor Code section 1701 defines an "artist" as:

> a person who is or seeks to become an actor, actress, model, extra, radio artist, musical artist, musical organization, director, musical director, writer, cinematographer, composer, lyricist, arranger, or other person rendering professional services in motion picture, theatrical, radio, television, Internet, print media, or other entertainment enterprises or technologies.

Cal. Lab. Code, § 1701(a). Chen's child is and was an artist under this definition. NYS's contract provided the "right and opportunity for CHILD to receive the services promised under this agreement cannot be transferred to another person." NYS's contract further provided: "Premiere does not promise that participation in the Premiere will result in any employment or any financial compensation for CHILD." The only reasonable inference from these statements is that beneficiaries of NYS's contracts sought to render professional services in the entertainment industry.

23. **Fees:** The money paid to NYS under its contracts constitutes a "fee" under the Krekorian Act. The Krekorian Act defines a "fee" as "any money or other valuable consideration paid or promised to be paid by or on behalf of an artist for services rendered or to be rendered by any person conducting business under this chapter." Cal. Lab. Code § 1701(d).

24. **Remedies:** The Krekorian Act provides a private right of action for violations:

> A person who is injured by a violation of this chapter or by the breach of a contract subject to this chapter may bring an action for recovery of damages or to restrain and enjoin a violation, or both. The court shall award to a plaintiff who prevails in an action under this chapter reasonable attorney's fees and costs. The amount awarded for damages for a violation of this chapter shall be not less than three

> times the amount paid by the artist, or on behalf of the artist, to the talent service or the advance-fee talent representation service.

Cal. Lab. Code § 1704.2. Because NYS's contract violates the Krekorian Act, it is also actionable under the UCL's unlawful and unfair prongs. Accounting, imposition of a constructive trust, and restitution are remedies available for UCL violations. Cal. Bus. & Prof. Code § 17203.

### Chen's Individual Allegations

25. On or about January 11, 2023, Chen signed a contract with NYS and paid Defendants $9,000 on or about the same date. Palance actively participated in NYS's operation and marketing, personally auditioned Chen's child, and personally selected the child for the opportunity to participate in NYS's July 2023 production. Palance also personally helped to sell NYS's contract to Chen.

26. The contract does not specify the date of the NYS production in which Chen's child was supposed to receive an opportunity to participate. At the time Chen signed the contract, however, NYS's representatives (including Palance) promised that NYS's production would take place on July 4 to July 8, 2023 on the Universal Studios studio lot. Chen gave NYS express notice that she was relying on these representations about the date of the July 2023 production, and told NYS that her family had prepaid vacation plans starting on July 13, 2023. On or about January 12, 2023 NYS's representative again told Chen that NYS's production would take place the week of July 4, 2023.

27. On February 23, 2023, NYS informed Chen that its July 2023 production would be on the week of the 10th of July. Chen again told NYS this conflicted with her family's vacation plans, but NYS refused to refund her money. Chen engaged in further negotiations with NYS but was not able to resolve her dispute with NYS, and was ultimately forced to retain counsel.

28. Ms. Chen has been injured by her payment and Defendants' receipt of sums due under the contract, which were directly and proximately caused by Defendants' operation of an AFTRS and change in the date of the production. Ms.

Chen has also been sustained injuries in the forms of emotional distress, out of pocket expenses, and wasted time incurred in attempting to remedy Defendants' operation of an AFTRS.

29. To the extent Defendants contend any provision of NYS's contract with Chen prohibits her claims in this Complaint, the contract is void as a contrary to fundamental California public policy. The Krekorian Act expressly prohibits any such waiver of rights. Cal. Lab. Code § 1705.2 ("A waiver by an artist of the provisions of this chapter is deemed contrary to public policy and void and unenforceable"). Any attempt to have consumers waive the rights identified above is unenforceable, and also constitutes a separate Krekorian Act violation. *Cf.* Cal. Lab. Code § 1705.2.

## Class Certification Allegations

30. **Class Definitions:** Plaintiffs bring this Complaint against Defendants, pursuant to Federal Rule of Civil Procedure 23, on behalf of themselves and the following **Class**:

> All natural persons who (a) paid NYS for the opportunity (for the person or the person's child or other beneficiary) to participate in a NYS production which was located in California; where (b) such payment was made within four (4) years of the date of this Complaint; (c) excluding any such payments that were (i) a percentage of the income earned by the person (or beneficiary) in the entertainment industry; or (ii) consisted entirely reimbursement for out-of-pocket costs actually incurred by NYS on behalf of the person (or their beneficiary) for services rendered by an independent third party.

Plaintiffs further bring this Complaint on behalf of on behalf of themselves and the following **Subclass**:

> All natural persons who (a) paid NYS for the opportunity (for the person or the person's child or other beneficiary) to participate in a NYS production which occurred on WBEI's property; where (b) such payment was made within four (4) years of the date of this Complaint; (c) excluding any such payments that were (i) a percentage of the income earned by the person (or beneficiary) in the entertainment industry; or (ii) consisted entirely reimbursement for out-of-pocket costs actually incurred by NYS on behalf of the person (or their beneficiary) for services rendered by an independent third party.

Excluded from the Class and Subclass are any entity in which Defendants have a

controlling interest or which has a controlling interest in Defendants, and Defendants' owners, affiliates, agents, legal representatives, predecessors, successors, assigns, employees, and agents. Also excluded are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Plaintiff reserves the right to revise and amend these class definitions based on facts learned during discovery.

31. **Numerosity:** The exact number of Class and Subclass members is unknown and is not available to Plaintiffs at this time, but such information is readily ascertainable by Defendants and their agents' records. The Classes and Subclass are so numerous that joinder of all members is impractical. Plaintiffs allege that there are at least forty members of the Class and Subclass.

32. **Commonality:** Plaintiffs and the members of the Class and Subclass have in common contracts with NYS (including common contractual language) and payments to NYS.

33. **Predominance:** In addition, common questions of fact and law exist as to all members of the Class and Subclass and predominate over the questions affecting only individual members of the Class and Subclass. Identification of the individuals who qualify as a member of the Class and/or Subclass will be sufficient to establish liability to the class member. The predominant common questions include:

a. Whether the opportunity to participate in NYS's productions offered in NYS's contracts constituted employment opportunities under the definition of the Krekorian Act;

b. Whether the opportunity to participate in NYS's productions offered in NYS's contracts rendered NYS an AFTRS under the definition of the Krekorian Act;

c. Whether WBEI materially facilitated NYS's operation of an AFTRS;

d. Whether WBEI knew enough to conclude NYS operated an AFTRS;

e. Whether Plaintiff and Class members are entitled to damages,

and the proper calculation of those damages under the Krekorian Act; and

f. Whether Plaintiff and Class members are entitled to restitution under the UCL;

g. Whether Plaintiffs and Class members are entitled to injunctive relief and attorney's fees and costs.

34. **Typicality:** Plaintiffs' claims are typical of the claims of the other members of the Class and Subclass. Plaintiffs are not different in any relevant way from any other Class or Subclass members, and the relief they seek is common to each alleged class.

35. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class and Subclass: Plaintiff's interests do not conflict with the interests of the other members of the Class and Subclass. Plaintiff has retained counsel competent and experienced in complex class actions, including class actions arising under the Krekorian Act and other consumer protection laws.

36. **Superiority:** The Classes and Subclass alleged in this Complaint are appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by each individual Class and Subclass member will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. It would be virtually impossible for Class members to individually obtain effective relief from Defendants' misconduct. Even if Class members themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, class actions present far fewer management difficulties and provide the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time,

effort, and expense will be fostered and uniformity of decisions will be ensured.

37.     **Generally Applicable Policies:** This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each class a whole. The policies of the Defendants challenged herein apply and affect members of each class uniformly, and Plaintiffs' challenge of these policies hinges on Defendants' conduct, not on facts or law applicable only to Plaintiffs.

38.     **Injunctive Relief is Appropriate:** Based on information and belief, Defendants continue to engage in the improper practices discussed above. Injunctive relief is necessary and appropriate to enjoin Defendants' conduct and to prevent irreparable harm to Plaintiff and Class and Subclass members for which they have no adequate remedy at law.

## FIRST CAUSE OF ACTION
### (Breach of Contract Against NYS by Plaintiff Individually)

39.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

40.     The communications between Plaintiff and NYS constitute a contract between Chen and NYS for the opportunity for Chen's child to participate in NYS's July 2023 production in California.

41.     Chen performed under her contracts with NYS and made all payments due to NYS under such contract. Chen's child also performed under the contract, and attended and completed all of the pre-production meetings required under such contract.

42.     NYS communicated to Chen that her child was authorized to participate in its July 2023 production (and therefore had completed all of the pre-production meetings required to participate in NYS's production): "Awesome job today, we are excited to see you all this summery for filming [] please start

memorizing your lines."

43. As Chen advised NYS, the terms and conditions of the July 2023 NYS production, and in particular whether the timing of said production would conflict with her prepaid family vacation was a material term of the contract between Chen and NYS.

44. NYS materially breached the terms of its contract with Chen when it changed the dates of the July 2023 production.

45. NYS's breach of contract damaged Chen. She lost the benefit of the bargain on the contract with NYS: her child was unable to attend the July 2023 NYS production, despite attending and completing all of the pre-production meetings required under the contract.

46. Chen seeks damages for NYS's breach of contract on her own behalf.

**SECOND CAUSE OF ACTION**
**(Cal. Lab. Code § 1702 Violation Against NYS and Palance by Plaintiff Individually, and on Behalf of the Class)**

47. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

48. Under its contracts, NYS accepts upfront fees in exchange for employment opportunities working as an actor, actress, model, extra, or other person rendering services in the entertainment industry (and specifically in NYS's productions). Chen's daughter and the beneficiaries of the NYS contracts with the other Class members qualify as artists under the Krekorian Act. *See* Cal. Lab. Code, § 1701(a). NYS qualifies as an AFTRS under the Krekorian Act. *See* Cal. Lab. Code § 1702.1.

49. NYS operates, and Palance owns and operates NYS, in violation of the Krekorian Act. *See* Cal. Lab. Code § 1702.1.

50. Chen and the other Class members were damaged by NYS and Palance's violation of Labor Code section 1702 when they paid fees to NYS. NYS's receipt of such fees is illegal.

51.     Plaintiff, on her own behalf, and on behalf of the other members of the Class, seeks to recover statutory damages (including "not less than three times the amount paid [] on behalf of the artist" to NYS), injunctive relief to restrain and enjoin NYS's violations, and an award of reasonable attorney's fees and costs.

### THIRD CAUSE OF ACTION
**(Cal. Bus. & Prof. Code § 17200 Violation Against NYS, Palance, and WBEI by Plaintiff Individually, and on Behalf of the Class)**

52.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

53.     Chen and the other Subclass members have been damaged by payment of fees to NYS.

54.     NYS and Palance's conduct alleged herein violates the UCL because it is unlawful. NYS and Palance violated Labor Code section 1702, and thereby wrongfully obtained money from Chen and the Subclass members.

55.     In addition or the alternative, NYS and Palance's conduct alleged herein violates the UCL because it is unfair. Their conduct causes a substantial injury to consumers and competition that outweighs any countervailing benefits to consumers or to competition and was not an injury the consumers themselves could reasonably have avoided. The significant fees paid by Subclass members to NYS constitute substantial injury, which they could not reasonably avoid given (a) the marketing for and representations about NYS's services and (b) the very low rate at which NYS victims ultimately secure gainful employment in the entertainment industry, which makes those representations at least reckless and otherwise unfair (even with NYS's disclaimer about any warranty of obtaining such gainful employment). In addition or the alternative, Defendants' violation is tethered to Krekorian Act, because their misconduct alleged herein violates the policy or spirit of Krekorian Act and its effects are comparable to or the same as a violation of the Krekorian Act.

56.     WBEI provided substantial assistance to NYS by allowing it the use

of its studio lot and the facilities therein to film NYS's productions (including the July 2023 production that was the subject of Chen's contract with NYS). On information and belief, NYS compensated WBEI for the use of its studio lot and facilities, and required that NYS procure adequate insurance for the same. By allowing NYS to film its productions using its studio lot and facilities, WBEI allowed NYS to create productions that enhanced NYS's marketing and provided NYS audiovisual examples of the "finished product" of the employment opportunities NYS offered to prospective consumers. Without the ability to film and show its productions, NYS would have encountered difficulties selling their services and could not demonstrate that such services could in fact result in participation in a film or TV production. Moreover, the imprimatur that WBEI provided to NYS by giving it the use of its studio lot and other facilities in California was essential to NYS's operations, and provided NYS a false appearance of legitimacy by its association with one of the world's largest entertainment conglomerates.

57. On information and belief, WBEI had access to enough facts to know that NYS's operations were illegal and violated the UCL. On information and belief, WBEI entered into negotiations with NYS and Palance regarding their use of its facilities, executed a contract for such use, prepared for such use by reserving specific facilities on the studio lot for NYS's use and confirming the placement of insurance, and monitored such use during NYS's productions to confirm NYS compliance with the terms of such contract.

58. NYS, Palance, WBEI, and the Doe Defendants are jointly and severally liable to Chen and the other Subclass members for NYS's foregoing UCL violations because they aided and abetting such violations: they had actual knowledge of such violations, and they provided NYS substantial assistance with such violations.

59. NYS, Palance, WBEI, and the Doe Defendants are also jointly and

severally liable to Chen and the other Subclass members for NYS's foregoing UCL violations under a civil conspiracy claim: they agreed to assist and participated in such violations, and Chen and the other Subclass members were damaged thereby.

60. Chen, on her own behalf, and behalf of the other Class members, seeks an accounting, imposition of a constructive trust, and restitution from Defendants, as well as injunctive and equitable relief under Business & Professions Code § 17203. Chen brings this action as a private attorney general, and to vindicate and enforce an important right affecting the public interest. Chen and the Subclass are therefore entitled to an award of attorneys' fees under Code of Civil Procedure section 1021.5 for bringing this action.

## PRAYER FOR JUDGMENT

WHEREFORE, Plaintiff, Arleen Chen, individually, and/or behalf of all other similarly situated, requests the Court grant the following relief against Defendants NYS Corporation, Michael Palance, and Warner Bros. Entertainment Inc., and Does 1 to 10:

a. Enter an order against Defendants pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Plaintiff as the class representative;

b. Enter an order appointing Preston Law Offices as class counsel;

c. Enter judgment in favor of Plaintiff and the Class for all damages available under California Labor Code § 1704.2, consistent with proof at trial;

d. Enter judgment in favor of Plaintiff and the Subclass for restitution under California Business & Professions Code § 17203, consistent with proof at trial;

e. Enter a judgment in favor of Plaintiff and the Class that enjoins Defendants from violating the Krekorian Act and/or UCL in the manner and/or using the means as alleged above and consistent with proof, and provides for an accounting and imposition of a constructive trust;

f. Award Plaintiff and the Class all expenses of this action, attorneys' fees and costs under California Labor Code § 1704.2, and require Defendants to pay the costs and expenses of class notice and administration;

  g. Award Plaintiff and the Subclass all expenses of this action, attorneys' fees and costs under California Code of Civil Procedure § 1021.5, and require Defendants to pay the costs and expenses of class notice and administration;

  h. Award Plaintiff, the Class, and the Subclass such further and other relief the Court deems just and appropriate.

Dated: February 12, 2024  By: s/Ethan Preston
            Ethan Preston (263295)
            ep@eplaw.us
            PRESTON LAW OFFICES
            4054 McKinney Avenue, Suite 310
            Dallas, Texas 75204
            Telephone: (972) 564-8340
            Facsimile: (866) 509-1197

            *Attorneys for Plaintiff, individually, and on behalf of all others similarly situated*

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: February 12, 2024        By: s/Ethan Preston
                                        Ethan Preston (263295)
                                        ep@eplaw.us
                                        PRESTON LAW OFFICES
                                        4054 McKinney Avenue, Suite 310
                                        Dallas, Texas 75204
                                        Telephone: (972) 564-8340
                                        Facsimile: (866) 509-1197

*Attorneys for Plaintiff, individually, and on behalf of all others similarly situated*